UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  06-21203-CIV-MORENO**

JONES BOAT YARD, INC.,

      Plaintiff,

vs.

M/V CAPELLA C, her engines, tackle, and other
appurtenances, *in rem*, & THESEUS NOMINEES
LTD.,

      Defendant.

_____/

## JUDGMENT ON PARTIAL FINDINGS

THIS CAUSE came before the Court at Opening Statement of the Bench Trial commenced

in this matter on **November 14, 2006** and the admission of all exhibits without objection on

**November 14, 2006**.

THE COURT has considered the pertinent portions of the record, the exhibits admitted into

evidence at the commencement of the Bench Trial and being otherwise fully advised in the premises,

it is

**ADJUDGED** that the Court issues a Judgment on Partial Findings pursuant to Federal Rule

of Civil Procedure 52(c), which provides as follows:

> If during a trial without a jury a party has been fully heard on an issue
> and the court finds against the party on that issue, the court may enter
> judgment as a matter of law against the party, on that issue, the court
> may enter judgment as a matter of law against that party with respect
> to a claim or defense that cannot under the controlling law be
> maintained or defeated without a favorable finding on that issue. . .
> Such a finding shall be supported by findings of fact and conclusions
> of law.

At opening statements, counsel for both sides agreed on the facts relating to the breach of contract claim and the Court admitted all the exhibits into evidence without objection. In considering the opening statements, the exhibits admitted into evidence, and the depositions and exhibits submitted at summary judgment, the Court agrees with the parties that indeed a contract was formed. An oral agreement was entered by Brad Bean, an agent of Jones Boat Yard, with the Defendant's representative, Scott Hay. This oral agreement supplements and does not contradict any of the terms of the written Ship Repair and Work Order Contract. The record is replete with evidence supporting the existence of this oral agreement, including the parties' course of conduct, the spreadsheets containing fixed price notations, and a November 30, 2005 unsigned Supplemental Agreement indicating the parties agreed to work on a fixed price basis, not on a time and materials basis.

Having found the parties' agreement to be on a fixed price basis, the remainder of the Bench Trial will focus on fixed price damages --what Defendant owes Plaintiff for work done but not paid. The Court will also consider the Defendant's counterclaim for breach of warranty and the Florida Consumer Collection Practices Act.

### I. FINDINGS OF FACT AS TO BREACH OF CONTRACT CLAIMS

The Capella C is a 193-foot motor yacht owned and operated by Theseus Nominees Ltd. ("Theseus"). In early 2005 the Capella C was in need of maintenance and refurbishment work and was due for a regularly scheduled 5-year Lloyd's insurance survey. Theseus sought bids from various boat yards across the globe to perform the refit. "Refit" is a term in the yachting industry that generally describes any major repair or refurbishment of a vessel that takes place at certain times based on the age of a vessel. Undisputedly, the boat yard that handled the Capella's previous refit

far exceeded the agreed on budget.

Theseus claims it selected Jones Boat Yard, located in Miami, Florida, to perform the refit for two reasons: (1) the excellent reputation of Jones Boat Yard's manager Brad Bean; and (2) Jones Boat Yard's agreement to perform the refit based on a "fixed price" basis as opposed to a "time and materials" basis.   A fixed price basis means that the line item for work would have an agreed-upon price prior to work commencing.  A "time and materials" contract is one where the customer is billed on an ongoing basis as labor is expended and materials are used.

To support its claim that this contract is "fixed-price," Defendant Theseus states that during the bidding process it insisted on such a contract based on its prior experience.  During the bidding process, Theseus provided Jones Boat Yard with specific projects lists that enumerated and described the repairs needed, the specifications for the scope of work, and when necessary the boat plans and designs.  Jones Boat Yard's Project Manager Brad Bean went to France, the then-location of the Capella C, on three or four occasions, each time to evaluate the scope of work and put together a scope of work with fixed prices, where possible.  This process took almost eleven months.  By November 9, 2005, Brad Bean had put together a spreadsheet that detailed each line item of work that needed to be done and the fixed price for the line item.  *See* Defendant's Motion for Summary Judgment at Tab 10.  In some cases, it states that a fixed quote is unavailable but that an "[e]stimate with a fixed price to follow prior to commencement of the work." *Id.*  The list is legible, color-coded, and comprehensive, containing over 100 line items of work.  In most cases, each line item indicates that it is a "fixed quote."  The November 9, 2005 spreadsheet indicates that the work will total almost $1.7 million.  It is unsigned.

In reliance on the November 9, 2005 spreadsheet and Bean's oral representation that this

would be a fixed price agreement, Theseus claims the Capella C began its one-month voyage to the

United States from Europe in November 2005.  The Capella C reached the United States on

December 17, 2005.  In the interim, Brad Bean sent an email to a Theseus representative on

November 30, 2005, attaching a "Supplemental Agreement,"  which stated that "all work as

described and identified on the attached work list, will be performed for the agreed upon pricing as

listed next to each task." *See* Defendant's Motion for Summary Judgment at Tab 12.[1]  The parties

did not sign the Supplemental Agreement.  On December 31, 2005, after the Capella C arrived in

Miami and work had started, the Capella C's captain signed the "Work Order and Ship Repair

Contract" ("Ship Repair Contract"). The Ship Repair Contract is signed only by the Capella C

captain and not by a representative of Jones Boat Yard.

Work ensued for the next three months under a fixed price arrangement.  Payments were

made by the Capella C based on the prices in the November 9 spreadsheet and were accepted by

Jones Boat Yard.  On certain jobs, additional repairs were needed and change orders were generated

to document the additional work over and above the original work scope and the original price

agreed upon.  *Depo. of Bean* at 56.   Mr. Elias Rodriguez, a principal of Jones Boat Yard,

---

[1]The Supplemental Agreement reads in its entirety as follows:
> This supplemental agreement is made this 30th day of November 2005 between
> M/Y Capella C and Jones Boat Yard.  This agreement is not to replace or
> supersede Jones Boat Yard Ship Repair contract, which will be executed upon
> arrival of the vessel.   It is agreed between Jones Boat Yard and M/Y Capella C,
> that all work as described and identified on the attached work list, will be
> performed for the agreed upon pricing as listed next to each task.  It is also agreed
> that the schedule of values/payment schedule is agreed by both parties provided
> work is being performed according to the estimated production schedule.
> Agreed _____ day of December, 2005.
>
> _____                    _____
> On behalf of Jones Boat Yard                      On behalf of M/Y Capella C

acknowledged that change orders would not have been used if this were a time and materials refit. *Depo. of Rodriguez* at 133.   Jones Boat Yard documented the Capella C's refit as a fixed price agreement in its internal accounting software. *Depo. of Bean* at 88-90, 150.  Jones Boat Yard assigned a notation for each job confirming the billing manner.  The notation "FPR- Fixed Price to Revenue" means the parties agreed on a fixed price for the corresponding job.  *Id.* at 70, 88-89; Defendant's Motion for Summary Judgment at Tabs 20, 21.  Throughout the work period, the Jones Boat Yard's invoices did not reflect time and materials billing.  *Depo. of Rodriguez* at 172-73; *compare* Defendant's Motion for Summary Judgment at Tabs 22-25 (the undisputed invoices based on fixed prices) *with* Tabs 26-27 (the disputed invoices based on time and materials billing).

By the end of March 2006, the refit was on track.  No billing issues had arisen.  Theseus had paid Jones Boat Yard a total of $1,828,289.81.  At that time, Theseus believed it owed approximately $120,000 on the fixed price items and about $217,000 to complete the entire refit.   At the end of March 2006, Brad Bean resigned approximately one month before Jones Boat Yard completed the refit.   Two weeks later, the principals of Jones Boat Yard called a meeting to inform the representatives of the Capella C that it was in arrears for $450,000 based on time and materials incurred to date.  *Depo. of Rodriguez* at 225, 229, 252-55.  Jones Boat Yard issued invoices to the Capella C totaling $745,000, based on time and materials charges.  These invoices are disputed.

Plaintiff claims the Ship Repair Contract is the complete contract between the parties as it contains an integration clause. And, because the Ship Repair Contract indicates a default method of pricing based on "time and materials," Plaintiff is entitled to a ruling declaring the pricing scheme in the contract to be on a "time and materials" basis and not a "fixed price" contract.   The operative provisions of the Ship Repair Contract on which Plaintiff relies are as follows:

¶ 1.  In the event that specific prices are not quoted in writing, it is understood and agreed that all work is to be performed at Jones Boat Yard, Inc.'s [sic] usual and customary time and material charge. Price quotes by Yard Personnel, if any, are rough estimates and are not binding upon Jones Boat Yard, Inc. . . .

¶ 11.  No alterations, modifications, and/or amendments to this contract shall be binding unless in writing and duly signed by Jose Bared, Victor Bared, or Elias Rodriguez, who are the only authorized agents of Jones Boat Yard, Inc.  The terms and conditions herein shall apply to all subsequent work orders by OWNER or his agents whether orally or in writing.  The signatures on this work order will apply to all subsequent pages regardless of date.

Theseus argues the Ship Repair Contract does not constitute the entirety of the parties' agreement because it is incomplete and references other documents.  Theseus claims the Ship Repair Contract is incomplete because it does not state what work is to be performed or at what price.  Theseus argues Bean's November 9 spreadsheet is a work order that details that information for both parties and forms part of the agreement, either by references contained in the Ship Repair Contract or by operation of the unsigned November 30, 2005 Supplemental Agreement.  Moreover, Theseus argues the Ship Repair Contract specifically incorporates by reference the Shipyard Rules, which states that a contract is billed either on a fixed price or on a time and materials basis.  Theseus also references other provisions throughout the Ship Repair Contract, which it claims reference the scope of work to be performed by Jones Boat Yard on a fixed price basis.

## II.  CONCLUSIONS OF LAW AS TO BREACH OF CONTRACT CLAIMS

The dispute in this case ensued due to differing contract interpretations.  Plaintiff Jones Boat Yard claims that this contract was to be billed on a time and materials basis and that the November 9, 2005 spreadsheet issued by Brad Bean is not binding on Jones Boat Yard.   Defendant Theseus

claims the Ship Repair Contract has to be read *in pari materia* with the November 9, 2005

spreadsheet, which it calls a work order, the Shipyard Rules, and the unsigned November 30, 2005

Supplemental Agreement. Theseus claims that taken together these documents unquestionably show

the parties' agreement was a fixed price agreement. And, even if they do not, Plaintiff Jones Boat

Yard is equitably estopped from arguing that it is not a fixed price contract given the parties' course

of conduct.

        I. *The plain meaning of the agreements*

        "Under the ordinary rules of contract construction, a court first examines the 'natural and

plain meaning of the contract.'" *Siedle v. Nat'l Ass'n of Sec. Dealers*, *Inc.*, 248 F. Supp. 2d 1140,

1144 (M.D. Fla. 2002) (quoting *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996));

*Roberts v. Williams-McWilliams Co., Inc.*, 648 F.2d 255, 264 (5th Cir. 1981) (stating contract should

be given plain meaning in maritime case). Moreover, an agreement must be read as a whole, and

individual terms must not be considered in isolation but must be read in relation to one another. An

interpretation that gives effective meaning to all of the terms is preferred to an interpretation that

leaves a part unreasonable or of no effect. Restatement (Second) of Contracts § 203(a) (2006).

        The traditional rule of construction in admiralty cases is to "construe the contract language

most strongly against the drafter." *Edward Leasing Corp. v. Uhlig & Assoc., Inc.*, 785 F.2d 877, 889

(11th Cir. 1986) (quoting *Navieros Oceanikos, S.A. v. S.T. Mobil Trader*, 1977 A.M.C. 739, 745 (2d

Cir. 1977)). Another generally accepted rule of contract law is that where a writing refers to and

sufficiently describes another document, that other document is to be interpreted as part of a writing.

Restatement (First) of Contracts § 208 ("The memorandum may consist of several writings, . . . (b)

though one writing only is signed if . . .(ii) the signed writing refers to the unsigned writing, or (iii)

it appears from examination of all the writings that the signed writing was signed with reference to

the unsigned writings"). Mindful of these black-letter principles, the Court examines the documents

at issue in this case. Undisputedly, Plaintiff Jones Boat Yard drafted the documents at issue.

### A. Ship Repair Contract and Shipyard Rules

Taken in isolation, the Ship Repair Contract offers no guidance as to whether the parties, in

fact, agreed to fixed prices or time and materials billing. It merely provides a default method of

pricing absent an agreement. The relevant contractual provision reads: "*In the event that specific*

*prices are not quoted in writing . . .* work is to be performed . . . [on a] time and material charge."

Ship Repair Contract ¶ 1. To give this language its plain meaning, the Court must construe it as

referring to a separate writing detailing pricing, and if one does not exist, then the default method

of pricing (i.e. time and materials billing) will be used.

Other contractual provisions make reference to a scope of work to be performed. The actual

Ship Repair Contract, which is supposed to represent the entire agreement between the parties, does

not obligate Jones Boat Yard to complete a single project on this $1.8 million refit. Instead, the Ship

Repair Contract makes vague assertions to a separate document detailing the scope of work. The

following excerpts from the Ship Repair Contract constitute those vague assertions to a separate

work scope that is not included within its four corners:

> ¶3 Jones Boat Yard, Inc. shall proceed with due diligence to effect the repairs enumerated on the Work Order. . .
>
> ¶ 6 Jones Boat Yard undertakes to perform the work outlined and haul and launch vessels. . .
>
> ¶ 8 Upon completion of the work outlined and presentation of invoice, a daily docket charge will accrue . . .
>
> ¶12 In the event that it is discovered that additional repairs and/or

> material will be required . . .
>
> ¶21 It is noted that in the event work is delayed on the <u>original</u> <u>contracted items</u> only by Jones Boat Yard's own doings, . . .

To read this document as not referencing a separate work scope that was in existence at the time this document was signed is to not give any of these provisions effect.   Perspicuously absent from the Ship Repair Agreement are any lists of "work outlined" and "original contracted items."  Moreover, the Ship Repair Contract contemplates that there is already a work scope set forth in another document, to which "additional" repairs will be added as needed.  And, while the Ship Repair Contract does refer to itself as a "Work Order" there is no work actually ordered within its four corners.

The November 9 spreadsheet that predates the Ship Repair Contract and lists over 100 projects to be performed on the vessel clearly fills in the gap in the  Ship Repair Contract and gives the provisions referencing a scope of work effect.  It also provides the pricing information referenced in paragraph 1 of the Ship Repair Contract.  Plaintiff claims that the photographs and surveys that comprise Tab 1 of Defendant's Motion for Summary Judgment also fill this gap, even though those documents contain no prices. Plaintiff's Response to the Motion for Summary Judgment at 9.   The Court finds that both of these documents that do not conflict at all with each other fill in the gap and allow the Court to give the Ship Repair Contract meaning.

In addition to the ambiguous references to outside documents detailing the work scope and pricing, the Ship Repair Contract expressly incorporates by reference the "Shipyard Rules."   In reading the Shipyard Rules together with the Ship Repair Contract, the Court finds other provisions that also lend support for Defendant's position.  The following provisions from the Shipyard Rules are relevant to the analysis:

> ¶ 9 <u>Quotation and Billing Policy</u> - <u>Jones Boat Yard performs work on</u>

a "Fixed/Agreed Price" or a "Time and Materials' basis." "Fixed/Agreed Price" or written quotation are based on the definition of the scope of work contained in the specifications provided and on prior known conditions.

¶ 10 Account & Payment Procedures - "Before work commences the following must be supplied to Jones Boat Yard . . . 2) Details of all work desired to be performed and a signed Work Order and Ship Repair Contract.

¶11 The Work Order and Ship Repair Contract - "If any new or modified work is necessary after the original work order is opened, the owner or representative must either sign a Work Order Amendment."

Again, these provisions from the Shipyard Rules suggest that a separate document laid out the original scope of work. It references that a "'Fixed/Agreed Price' or written quotation are based on the definition of the scope of work contained in the specifications provided." There are no specifications or price quotes within the Ship Repair Contract or the Shipyard Rules; accordingly, to give this provision meaning, the Court must find there is some document that provides "specifications" on the work to be performed and on which prices are based. Moreover, the Shipyard Rules obligate the Owner to provide all "details of all work" to be performed. And finally, the Shipyard Rules contemplate that an "original work order" will be opened – again suggesting a separate document(s) detailing the work to be performed. Accordingly, the Court does find the Ship Repair Contract unequivocally references a separate document(s) that should be read *in pari materia* with the Ship Repair Contract.

   II.   *The Integration Clause & Parol Evidence Rule*

   Having already found the Ship Repair Contract incomplete and ambiguous as to what writings it is referring to, the Court must decide the effect of the Integration Clause. *See* Restatement

(Second) of Contracts § 209(2) ("Whether there is an integrated agreement is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parol evidence rule."). To determine whether there is an integrated agreement, the Court must determine whether the parties have "reduce[d] an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete agreement. . . ." *Id.* at § 209(3); *Id.* at § 213 (comment) ("Where an agreement is partly oral and partly written, the writing is at most a partially integrated agreement."). At most the Ship Repair Contract is partially integrated; the Ship Repair Contract clearly cannot serve as the complete agreement between the parties given its lack of specificity. It fails to detail the scope of work and pricing on a multi-million dollar refit of the Capella C.

Moreover, the Court finds the terms of the oral agreement between Brad Bean and Theseus's representatives, memorialized in a few documents and emails, are consistent with the Ship Repair Contract. *See* Restatement (Second) of Contracts § 213(1) (2006) ("A binding integrated agreement discharges prior agreements to the extent that <u>it is inconsistent with them</u>.") (emphasis added). Because the prior oral agreement is consistent with the Ship Repair Contract, merely supplying the missing terms, the Ship Repair Contract's integration clause does not operate to discharge the prior oral agreement. *Id.* at § 204 Comment (e) (2006) ("The fact that an essential term is omitted may indicate that the agreement is not integrated or that there is partial rather than complete integration. In such cases the omitted term may be supplied by prior negotiations or a prior agreement.")

Moreover, it is well-settled that where there is an ambiguous or incomplete agreement, parol evidence is allowed to give meaning to the contract. *See U.S. for Use & Ben. of E. Gulf v. Metzger Towing, Inc.*, 910 F.2d 775, 779 (11th Cir. 1990) (stating that in case of dispute over maritime contract parol evidence is admissible to explain ambiguity in a contract)*; M.M. Mathews v. Drew*

*Chem. Corp.*, 475 F.2d 146, 148-49 (5th Cir. 1973) (even though writing declares on its face that it is integrated, in certain circumstances, as where document is but a partial integration – i.e. incomplete, parol evidence is admissible to determine what document was intended to mean). Having found there is reason to consider parol evidence, the Court will look to the validity of that evidence to determine the nature of this contract.

III.  *Oral Fixed Price Agreement and the November 30 Supplemental Agreement*

Jones Boat Yard asserts the parties did not intend to be bound by the unsigned November 30 Supplemental Agreement, which binds the parties to a "Fixed Price Agreement." It is well-settled that "[i]t is not necessary . . . to reduce an agreement to writing to bind the parties, as long as the parties intend to be bound at the time of the oral agreement." *Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1229 (11th Cir. 2000) (quoting *Nautica Int'l Inc. v. Intermarine USA, LP*, 5 F. Supp 2d 1333, 1341 (S.D. Fla. 1998)).  "Acceptance of a bid to perform services can create an enforceable contract in the absence of a written agreement." *Id.*  Here, there is testimony on the record to corroborate Defendant's position that the parties orally agreed to a "Fixed Price Agreement."  *Depo. of Bean* at 105 ("[the Supplemental Agreement] should have been returned, signed, and approved and in the . . .file."); *Depo. of Scott Hay* at 140 ("as it came as an attachment to an e-mail, we never expected it to be signed as an e-mail.  To us it was the work in progress.  That was a written agreement confirming the entire project as it was planned from the very beginning").

Surely, the November 30 Supplemental Agreement constitutes strong evidence of an oral agreement to be bound by fixed prices, especially considering that Jones Boat Yard prepared it. There is no record evidence that either side specifically repudiated it and it is consistent with the wording of Paragraph 1 of the Ship Repair Contract (signed only by Defendant).  Moreover, there is no evidence that between November 30, 2005 and December 31, 2005, the parties intended to modify

the Fixed Price Oral Agreement and make it into a time and materials written agreement. And, in any event, the Court finds that Paragraph 1 of the Ship Repair Contract does not effectively modify the oral agreement -- under which both parties were performing -- into a time and materials contract. It merely provides that time and materials billing will be used where there is no other writing detailing a pricing arrangement.

The parties course of conduct also supports the existence of this oral fixed price agreement. There are many emails between the parties claiming time and again that Brad Bean would be providing fixed prices for the work to be done. The invoices issued until March 2006 were all based on fixed prices and the Plaintiff's own accounting software labeled this as a fixed price arrangement. The November 9 spreadsheet indicated the prices were fixed prices and where a fixed price was not yet determined, Jones Boat Yard would provide a fixed price on a line item before doing any work. There is absolutely no evidence in the record disputing this course of conduct was based on a fixed price method.

Rather than rebut this strong record evidence by showing the November 30 writing was in some way repudiated or modified or that the parties' course of conduct evidenced a time and materials contract, Plaintiff argues that based on Paragraph 1 of the Ship Repair Contract, Bean was not authorized to issue the Supplemental Agreement or make an oral agreement for fixed prices.

IV. *Are Brad Bean's Price Quotes Binding*

Vehemently throughout its papers, Plaintiff argues that Brad Bean had no authority to bind Jones Boat Yard to any price quotes. It relies on the following provisions in the Ship Repair Contract to support its position.

> ¶1. Price quotes by Yard Personnel, if any, are rough estimates and are not binding upon Jones Boat Yard, Inc.

¶ 11. No alterations, modifications, and/or amendments to this contract shall be binding unless in writing and duly signed by Jose Bared, Victor Bared, or Elias Rodriguez.

First, Plaintiff claims that Brad Bean is "Yard Personnel" and his price quotes to Defendant are not binding.  And, Defendant should have known that the spreadsheets prepared and modified by Bean throughout the course of the project were not valid modifications to the Ship Repair Contract because they were never signed by Jose Bared, Victor Bared or Elias Rodriguez.

There is plenty of record evidence, however, that Bean was not "Yard Personnel" -- a term that is not defined in the Ship Repair Contract-- and, in fact, was authorized to provide price quotes. First, Bean sent an email indicating that he would be providing all review and approval of any documentation between the parties.  Bean's email, copied to Mr. Jose Bared, reads:

> I have instructed my staff, that all correspondence regarding [the Ship Repair Contract] and all future correspondence with you and the owner's [of the Capella] office will be directed through myself only as to eliminate any documentation being sent to you, **which I have not reviewed and approved**.

Jose Bared admitted that he does not recall telling Bean he had no authority to write this email. *Depo. of Jose Bared* at 143.

The record evidence also lends support to the argument that Brad Bean was not "Yard Personnel," and was authorized to give price quotes. Mr. Elias Rodriguez, a Jones Boat Yard principal, testified that giving "quotes" was "[Mr. Bean's] job." *Depo. of Rodriguez* at 67.  Thus, Mr. Bean had express authority to give quotes.  Moreover, Brad Bean was a sales manager, who did not work out in the boat yard and on the vessel.  Rather, his job was to quote, manage, bill and run the Capella C's entire refit without supervision from Jones Boat Yard's principals.  He earned approximately $200,000 in 2005 and had his office next to the Jones Boat Yard principals.  *See* Brad

Bean's 2005 Income Tax Statement; *Depo. of Jose Bared* at 146-47 ("Anybody who's hourly that works that does not work in the office per se is what I consider field staff."); *Depo. of Rodriguez* at 102 ("[Bean] was the logical candidate to communicate concerns on the vessel to the **yard personnel**.") (emphasis added).

Moreover, Plaintiff claims that Bean had no authority to modify the Ship Repair Contract per paragraph 11, which required the signature of one of three Jones Boat Yard principals. The bottom line is Brad Bean did not modify the Ship Repair Contract by his actions. The spreadsheets Bean issued did not in any way modify the terms of the Ship Repair Contract. There is no reason for the Court to find that the requirements of paragraph 11 were triggered by Brad Bean's providing additional pricing information. Not even the Change Orders, which did modify the work scope or added projects, were signed by any of the principals of Jones Boat Yard. If the Change Orders (over which there is no dispute) did not warrant the principals' signatures, surely Brad Bean's actions that were consistent with the written Ship Repair Contract did not constitute modifications of the type contemplated in Paragraph 11. *See* Exh. 49, Defendant's Opening Statement Exhibits (showing work order amendments, or change orders, were usually signed by Captain of the Capella C and at times Brad Bean, but not by the principals of Jones Boat Yard as listed in paragraph 11 of the Ship Repair Contract). Accordingly, based on this evidence, the Court finds that Brad Bean did have authority to issue the price quotes, and those price quotes are binding on Jones Boat Yard.

V. *Estoppel*

Equitable estoppel is "grounded on a notion of fair dealing and good conscience. It is designed to aid the law in the administration of justice where without its aid injustice might result." *Marine Transp. Servs. Sea-Barge Group, Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1138 (11th Cir. 1994). The elements of equitable estoppel are (1) a representation as to a

material fact that is contrary to a later-asserted position, (2) good faith reliance on that representation, and (3) a detrimental change in position by the later party due to the reliance. *Id.*, 16 F.3d at 1139. Stated simply, estoppel arises when a representation from one party induces another's reliance and damages ensue.

Defendant claims the three elements of estoppel are met. It claims Bean unequivocally represented that the contract was fixed price. *See Depo. of Bean* at 32-33. As a result, Theseus relied on that representation and decided on Jones Boat Yard to refit the vessel. In reliance, the Capella C was sailed from Europe to Miami, Florida – a voyage that took one month. Believing it was a fixed price contract, Theseus claims it did not monitor laborer time spent on the refit. Theseus claims that at the eleventh hour and after months of work the principals of Jones Boat Yard changed their position on pricing to the detriment of Theseus and giving rise to this lawsuit. Because the record evidence supports Theseus's position, the Court finds that Plaintiff is equitably estopped from claiming the contract was one that was on a time and materials basis.

VI. *Ratification*

"Ratification, as applied to the law of agency, is the adoption or affirmance by a principal of the acts of his agent, either expressly, as by written act, or impliedly, as by acceptance of the benefits of the contract." *Spurrier v. United Bank*, 359 So. 2d 908, 910 (Fla. 1st DCA 1978); Restatement (Second) of Agency § 82 (2006) ("[r]atification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act. . . is given effect as if originally authorized by him.").

The record evidence supports Defendant's position that Jones Boat Yard cannot disavow the fixed price arrangement made by Brad Bean. The invoices issued until March 2006 were all based on fixed prices and the Plaintiff's own accounting software labeled this as a fixed price arrangement.

-16-

Up until the repudiation of the fixed price agreement, the evidence shows Jones Boat Yard ratified

Brad Bean's actions throughout the course of his dealings with Theseus's representatives.

### III. CONCLUSION

Accordingly, the Court finds the contract between the parties is based on fixed prices.  The

remainder of the Bench Trial will focus on fixed price damages --what Defendant owes Plaintiff for

work done but not paid. The Court will also consider the Defendant's counterclaim for breach of

warranty and the Florida Consumer Collection Practices Act.

DONE AND ORDERED in Chambers at Miami, Florida, this _17_ day of November, 2006.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE


Copies provided to:

Counsel of Record